[Civ. No. 6252. Second Appellate District, Division Two.—September 22, 1930.]

THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants, v. THE CITY OF SOUTH GATE (a Municipal Corporation), Respondent.

Jess E. Stephens, City Attorney, and Clarence S. Hill, W. B. Mathews, George T. Warren and F. M. Bottorff for Appellants.

Clyde Woodworth, City Attorney, Brewton A. Hayne and Arthur P. Hayne for Respondent.

THOMPSON (IRA F.), J.—In 1923 the legislature passed an act purporting to grant "to every municipal corporation of the State of California the right to construct, operate and maintain water and gas pipes, mains and conduits, electric light and electric power lines, telephone and telegraph lines, sewers and sewer mains, all with their necessary appurtenances, across, along, in, under, over or upon any road, street, alley, avenue or highway, and across, under or over any railway, canal, ditch or flume which the route of such work intersects, crosses or runs along, in such a manner as to afford security for life and property", it being provided in the act that the street or highway shall be restored as nearly as possible to its former state and such use located so as to interfere as little as possible with other uses and it being further provided "that before any such municipal corporation shall use any street, alley, avenue or highway within any other municipal corporation, the municipal corporation proposing to use such street . . .

shall request the municipal corporation in which such street . . . is situated to agree with said municipal corporation proposing to make such use, upon the terms and conditions to which such use shall be subject and the location thereof, and if said two municipal corporations are unable to agree on such terms and conditions and location within three months thereafter, then the municipal corporation proposing to use such street . . . may bring an action in the superior court of the county in which the same is situated against such other municipal corporation to have such terms and conditions and location determined, and in such action such superior court may determine and adjudicate the terms and conditions to which such use of the said street, avenue, alley or highway shall be subject, and the location thereof, and upon the making of the final judgment in such action the municipal corporation desiring so to do may enter and use the street, alley, avenue or highway upon the terms and conditions and at the location specified in such judgment''. (Deering's General Laws, 1923, p. 1992; Stats. 1923, p. 147.) Pursuant to this act the plaintiffs commenced an action for the purpose of securing a judgment authorizing the use of certain streets in the defendant city to erect and maintain an electric transmission line and adjudicating the terms and conditions to which the use would be subject and the location thereof. It was alleged that the request had been made of the defendant city and that it had refused to agree; and that the plaintiff city had purchased certain land adjoining the streets which it proposed to use and cross. A demurrer to the complaint was interposed and sustained without leave to amend. From the judgment of dismissal the plaintiffs prosecute this appeal.

The respondent argues that the act here in question is unconstitutional because it attempts to confer upon the courts a legislative function and also because it is special legislation, and to the first of these questions we now turn our attention.

■ It is suggested in the brief of appellants that the tendency of legislation in recent years, with the approval of the courts, has been to break away from the theory of three separate and independent departments of government. That there has been such a tendency in legislation cannot be denied, but that it has met with approval by the courts

to any appreciable degree must be denied. The very fact that an effort, probably unconscious, is being made to break away from a tripartite system of government, instead of inducing the courts to relax their vigilance, ought rather to render them the more alert to the danger of infringing those constitutional limitations, under and by which the liberties of the people are preserved, and under the beneficent influence of which our nation has grown from a mere infant to one of the giant countries of the world. Unoppressed by unrestrained power gathered into the hands of one man or set of men the people have bathed in the sunshine of contentment, happiness and unparalleled prosperity. Reason dictates that if we are to continue to go forward, we should pay strict heed to those fundamentals of government which have served us in the past, and not be led astray by the glamour of an illusion, misnamed progress. We ought to be equally alert to detect an attempt to confer legislative authority upon judicial bodies and to resist the legislative interference with judicial functions. We agree with those authorities which declare that to define the extent of judicial functions is a thing not free from difficulty (*City of Zanesville* v. *Zanesville Tel. & Tel. Co.*, 64 Ohio St. 67 [83 Am. St. Rep. 725, 52 L. R. A. 150, 59 N. E. 781, at 783, 784]), but it is indisputably true that there exists certain well-known principles and tests by which it may be determined in a given instance whether a power be judicial or legislative.

In general, judicial authority is exercised for the purpose of determining the rights or liabilities of parties according to law, with respect to transactions already had between them, while legislative authority is made use of for the purpose of announcing the law applicable in future cases. With some exceptions the judicial function is to find facts and apply rules of law thereto for the purpose of settling a dispute or contest between parties concerning their rights. (*People* v. *Oakland Board of Education*, 54 Cal. 375; *Quinchard* v. *Board of Trustees*, 113 Cal. 664 [45 Pac. 856].) There can be no doubt but that the legislature in this instance conferred upon appellant municipality (assuming the constitutionality of the statute) the right to erect and maintain the proposed electric transmission line. The courts have not and should have no voice in such a grant. It is further alleged that more than three

months prior to the filing of the action the appellant municipality proposed to the respondent city the terms and conditions of the use of the streets in question and submitted an agreement therefor, but that the respondent city failed and refused to accede thereto. Here, then, is a contest revolving around certain asserted rights of the parties, and arising by virtue of existing laws. In what manner is the contest to be settled if not by submission to a judicial tribunal? If the respondent city refuses upon the theory that appellant has no right to erect and maintain an electric transmission line, it is obvious that the controversy must be adjudicated with reference to the statute from which we have quoted and a judicial construction thereof. If it refuses because it fears the existing use of the streets will be unreasonably interfered with by the new use, the conflict of rights is subject to adjudication by a judicial body. If it refuses because it claims the right to legislate reasonable terms and conditions to which the use shall be subject, its rights and limitations in this particular are the proper subject of judicial inquiry. Finally, if it refuses because in its opinion the proposed location is dangerous to its citizens its contention in this regard is the subject of proof and adjustment. It cannot, however sit, supinely by and deny the right granted to another · city without being compelled to submit its contention or claims of right to a court for adjustment. Thus far we have cited no authority upon the precise question, not by reason of lack of analogous reasoning, but rather because we think that to dissect the statute will more clearly reveal the pertinency of prior pronouncements.

The case upon which the greatest reliance is placed by appellant is that of *City of Zanesville* v. *Zanesville Tel. & Tel. Co., supra.* In that case the telephone company was authorized by statute to use the roads and streets within the state for the purpose of erecting and maintaining its lines. It proposed to the city of Zanesville an agreement therefor and submitted an ordinance to be passed containing provisions that the lines should be so placed as not to interfere with travel, and for protecting the city against damages arising from the construction or maintenance thereof. The city declined and suggested more onerous conditions unsatisfactory to the company, which then brought an action

to have its rights determined. The trial court held the statute, authorizing the court to act, unconstitutional. The Ohio Supreme Court says:

"It is essential that the rights of the two corporations, each holding separate franchises from the state, with respect to the uses which each are claiming of the same property, should be so adjusted that both may be able to carry out the purposes of their creation, and neither defeated in their objects by the conduct of the other. To accomplish that result, some impartial tribunal must be clothed with the power to hear and determine, at the outset, what mode of use by each company of the same property will enable both companies to carry on their business without obstruction by the other. Where, it may be asked, could that power be more appropriately lodged than in the tribunal in which the appropriation proceeding is had? And can it be any the less judicial in its nature because exercised by the court in the first instance than it would be if resort were had to a court of equity to settle the dispute, after actual conflict between the two companies had arisen? If it is a judicial function to direct where the poles of a telephone line shall be placed in order to prevent interference with the proper use of a railway, it must be equally so to direct the mode of construction of the line in other respects so as to accomplish the same result, or so as to avoid unnecessary obstruction to the use of a public street. It may be said that the proceeding under this provision of the statute does not involve the exercise of any supervisory or administrative power belonging to municipal authorities. Neither does that under section 3461. That section makes provisions for all further appropriation proceedings that are necessary to the complete enjoyment by the companies of their franchises, by authorizing the condemnation of the easements appurtenant to property abutting on the public streets and ways, the owners of which are entitled to compensation for the new burden. And then follows the provision in question, designed, evidently, to furnish a competent tribunal, and provide a method of procedure, for the adjustment of any controversy between the company and the municipal authorities in regard to the mode of constructing the company's lines in the streets, the only remaining step necessary to enable the company to enter upon the full use of

its franchises. The provision is that 'the mode of use' of the streets 'shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they cannot agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley, or public way, so as not to incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness'. This is practically a provision for an appropriation proceeding against the municipality, and it is the only proceeding of that nature that is necessary against the municipal body in order to enable the company to make the needed uses of its streets. It is not the right to use the streets that is made the subject of agreement between the company and the municipal authorities or of determination by the court. That right, as has been seen, is granted to the company directly by the legislature, and it is not made to depend upon any consent or agreement on the part of the municipality. It is only the mode of such use that becomes the subject of agreement or judicial determination. The power of eminent domain residing in the state, it has been held, under our present constitution, is committed to the control of the general assembly by the grant of legislative power, and it may be exercised by that body directly, or by agencies like private corporations, in such manner, under such conditions, and through such tribunals having capacity to receive the jurisdiction, as may be by legislative enactment, provided; subject, however, to the constitutional requirement that the property taken be for a public use, and to the constitutional guaranty of compensation for private property so taken. A municipal corporation, though holding the fee in its streets, has no private proprietary right or interest in them which entitles it to compensation, under the constitution, when they are subjected to an authorized additional burden of a public nature. (Lewis, Em. Dom., sec. 119.) Being charged with a public duty only, with respect to the streets

under its control, including that of keeping them in repair, the compensation it is allowed to demand or receive for the use of its streets by a telephone company is expressly limited, by the provision of the statute under consideration, to 'what may be necessary to restore the pavement to its former state of usefulness', where it is disturbed in the construction of the company's lines. This compensation, not being for any private property taken, may, without interfering with any constitutional restraint, be assessed by the court without a jury. Nor can there be any doubt that the use of property and of highways for the legitimate purposes of a telephone or telegraph company is a public use, within the purview of the constitution, nor that the occupation of streets for those uses is consistent with their original design. Indeed, such companies have become indispensable business and social agencies, which materially relieve the public highways from use by the ordinary methods of travel, thus contributing to their convenience and safety. The statute contemplates that, if the mode of using the public ways of cities and villages by telephone companies were left entirely to agreement between the council and company, the franchise of the latter might be made unavailable by the refusal of the former to negotiate with the latter, or by *bona fide* disagreement of the parties, a contingency not unlikely to occur; and hence the necessity for the provision of section 3461, now in question, by which jurisdiction is conferred on a competent court to determine the mode of such use by an order binding on both parties. Whether that provision be considered as strictly a part of the system established for making appropriations by such companies under the power of eminent domain, or as incidental and auxiliary thereto, it calls for the exercise of judicial functions of the same general nature.

"The contention of those who contest the constitutionality of this statutory provision is that the proceeding authorized by it, though not nominally so, is in reality an appeal from the action of the municipal council, a purely legislative body, the purpose of which is to invoke the exercise of powers by the court of the same legislative character as those that have been exercised by, and properly pertain to, the council. This is an incorrect view of the statute. The proceeding is not an appeal from the council,

either in substance or form. An appeal is the removal of a cause or matter from an inferior jurisdiction after its decision to a superior jurisdiction for retrial on its merits, and a proceeding in a superior jurisdiction cannot, with any propriety, be called an appeal where the cause or matter involved was not before any inferior tribunal or body. No action of the council, nor any matter within its cognizance, is brought before the probate court by the proceeding thereon, under the statute, for review or reconsideration. The council is given no power to direct in what mode the lines of a telephone company shall be constructed in the streets of the municipality. Its sole province is to come to an agreement with the company in regard to the mode of using the streets by the company. The making of such agreement between the parties is not involved in the proceeding instituted in the court, nor is its action in that regard in any way invoked. The jurisdiction conferred on the court is to determine the controversy between the disputant corporations, arising from their disagreement or failure to agree, by an order binding on both, directing in what mode the telephone lines shall be constructed in the streets and alleys so as not to incommode the public in the use of the same. The method of calling this jurisdiction into exercise is not by appeal, and could not be so, for the reason already given, but, in the language of statute, is by an original 'proceeding instituted for that purpose'. The institution and prosecution of a legal proceeding in a court plainly comprehends the filing of a proper complaint, process for bringing the necessary parties into court, and judicial inquiry according to the usual rules and practice of courts. And this fact alone, of conferring on a judicial tribunal in the first instance the power to act in a given matter, is of controlling importance in giving judicial character to the nature of the power, though that is not necessarily a conclusive test, for if it were, the existence of a statute would establish its validity; but it is decisive in that respect, unless it is reasonably certain that the power belongs exclusively to the legislative or executive department. This court, in *State* v. *Harmon*, 31 Ohio St. 250, 259, approved of that principle, as stated by Selden, J., in *Cooper's Case*, 22 N. Y. 84, as follows: 'The principle . . . obviously is that where any power is conferred upon a court

of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power. The legislature, by conferring any particular power upon a court, virtually declares that it considers it a power which may be most appropriately exercised under the modes and forms of judicial proceedings.' "

In *Canada Northern Ry.* v. *International Bridge Co.,* (D. C.) 7 Fed. 653, we also find language very persuasive of the instant cause. In that case Congress authorized the construction of a bridge across the Niagara River by the International Bridge Company "and provided that 'all railway companies desiring to use said bridge shall have and be entitled to equal rights and privileges in the passage of the same, and in the use of the machinery and fixtures thereof, and of all appurtenances thereto, under and upon such terms and conditions as shall be prescribed by the District Court of the United States for the Northern District of New York' ". The objection being urged to a petition to have the terms and conditions fixed that it conferred legislative authority, it was said:

"The rights are created and established by the act; and this is the office of the legislative department. The power to adjudicate upon these rights, to ascertain, when controversy arises, their extent and value, and apply the appropriate remedy for their protection, is conferred upon the court; and this is the peculiar province of the judicial department.

"It is argued that the act attempts to confer upon the court the power to fix the rate of tolls which the International Bridge Company may charge, and that this is a legislative and not a judicial function. If Congress had fixed the rate of tolls, as it had the right to prescribe the conditions upon which the franchise might be enjoyed, no other authority could have intervened to change these conditions. But suppose the act, had in terms, provided that the bridge company might charge reasonable tolls, would not this have been a complete exercise of the legislative power, and would it not have remained for the judicial department to decide, when controversy should arise, what were or were not reasonable tolls? And if the act had provided for such a de-

termination by a judicial tribunal, would this have been unconstitutional? It seems to me clearly not. It is no less the exercise of judicial functions to prescribe a rule of conduct or protect the existence of a right during a future period, than it is to determine whether the right has been invaded in the past. It is one of the common offices of a court of equity to do this.

"It is said that that which distinguishes a judicial from a legislative act is that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases falling under its provisions. It seems to me that this statement of the distinction is incomplete. It is essential to judicial action that there be parties and a controversy. Judgment is only pronounced after a hearing. That would not be judicial action which should determine the existing law in relation to some existing thing, already done or happened, without the intervention of parties and the existence of a controversy; and when there are parties and a controversy it is not less a judicial act because the determination regulates rights and obligations in the future, and the manner in which they shall be observed. The act of Congress in effect provides that all the companies using the bridge shall have equal privileges in its use, and for a reasonable compensation, to be ascertained by the court if the parties cannot agree. The phraseology employed is unfortunate, and fairly suggests the objections which have been urged; but when the act refers the question of the conditions upon which an easement shall be enjoyed to a judicial tribunal for decision, after hearing the proofs and allegations of the parties the implication is cogent that this decision shall proceed upon settled principles of law and equity, and not upon arbitrary discretion."

It is unnecessary to the present problem to unqualifiedly approve the length to which these two authorities are extended, but their reasoning is conclusive of our question. And without quoting further we append a list of cases which sustain the result at which we have arrived. (*City of Newark* v. *Erie R. Co.*, 72 N. J. Eq. 447 [68 Atl. 413]; *State* v. *Superior Court*, 42 Wash. 491 [85 Pac. 264]; *West Jersey & S. R. Co.* v. *Atlantic City & S. Traction Co.*, 65

N. J. Eq. 613 [56 Atl. 890]; *City of Brownwood* v. *Brown Tel. & Tel. Co.*, (Tex. Civ. App.) 152 S. W. 709; *Lyon* v. *City of Payette*, 38 Idaho, 705 [224 Pac. 793]; *Ballard* v. *Titus*, 157 Cal. 673 [110 Pac. 118].)

It has been assumed so far herein that the legislature granted appellant the right to use the streets of respondent city, but it is argued by the latter as one of its reasons for maintaining that the statute confers legislative power, that the grant on account of the generality of its language is ineffectual to create a vested right until a final decree of court shall have been signed. ■ It cannot, of course, be denied that the authority of the legislature over the highways is sufficient to warrant it in granting such a franchise when deemed expedient. (*Western Union Tel. Co.* v. *Hopkins*, 160 Cal. 106 [116 Pac. 557]; *In re Smith*, 26 Cal. App. 116 [146 Pac. 82].) ■ ■ Under such circumstances it is unimportant whether the notice by appellant of its desire to use certain streets constitutes an acceptance of the grant, or whether the acceptance remains incomplete until the final location is determined upon. The appellant is clothed with a right and has done everything within its power to evidence its selection of particular streets for the purpose of exercising that right. The power to adjust the controversy is none the less judicial.

■ There yet remains the question whether the legislation is special.

Appellants' counsel direct our attention to decisions by our Supreme Court holding that a municipal corporation does not change its character by engaging in the business of supplying water and power. One of these cases is in point and must be accorded consideration in determining the present problem. It is the case of *City of Pasadena* v. *Railroad Com.*, 183 Cal. 526 [10 A. L. R. 1425, 192 Pac. 25], wherein it was held that the Railroad Commission was without authority to fix the rates to be charged by the city of Pasadena for supplying the inhabitants of the city of South Pasadena with water. The conclusion in the opinion was arrived at largely by reason of the language of sections 22 and 23 of article XII of the Constitution, which authorizes the legislature to confer upon the Railroad Commission the power of regulation of public utilities, and which sections it is said draw a marked distinction between

privately owned public utilities and municipally owned public utilities. Another case, that of *Marin Water Dist.* v. *Marin Water Co.,* 178 Cal. 308 [173 Pac. 469, 471], demonstrates that California at least, has departed from the rule laid down by the celebrated Marshall in the case of *Bank of United States* v. *Planters' Bank of Georgia,* 9 Wheat. (U. S.) 904 [6 L. Ed. 244, see, also, Rose's U. S. Notes], to the effect that when a government enters into business instead of communicating to the business any of its privileges and prerogatives, it descends to a level of the business in which it engages. In the California case, under the authority of a constitutional provision, it is held that a water district formed for the purpose of supplying its inhabitants with water has the right to condemn the property of a privately owned public utility theretofore engaged in the business of supplying water to the same people and that the enactment did not violate the provision of "the federal constitution prohibiting a state from depriving a person of his property without due process of law, or denying him the equal protection of the laws." The provision of the state Constitution to which we have here referred is section 23a of article XII and reads as follows:

"The Railroad Commission shall have and exercise such power and jurisdiction as shall be conferred upon it by the legislature to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings by the state or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district, and the right of the legislature to confer such powers upon the Railroad Commission is hereby declared to be plenary and to be unlimited by any provision of this Constitution. All acts of the legislature heretofore adopted which are in accordance herewith are hereby confirmed and declared valid."

Respondent's argument, therefore, that there is no "natural, intrinsic or constitutional distinction" to be drawn between a municipality and a private corporation engaged in the business of a public utility is foreclosed of that consideration which might otherwise be afforded it. The people in the Constitution have declared in no uncertain terms that such a distinction exists and have gone so far as to

provide for the condemnation of the property of a privately owned public utility to what we must perforce say is a greater public use when acquired by "the state, or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district".

Judgment reversed.

Works, P. J., and Schmidt, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 21, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 20, 1930.