[S. F. No. 2666.   Department One.—June 23, 1903.]

JACOB FROWENFELD, Respondent, v. MAURICE CASEY, Appellant.

PARTY-WALL—CONSTRUCTION OF CONTRACT—HEIGHT OF WALL LIMITED.—A contract for a party-wall definitely providing for the addition of a sixth story to each of two adjoining buildings, of five stories each, and regulating their rights therein, is to be construed as limiting the height of each building to six stories, and neither of the adjoining owners can use the party-wall to sustain a seventh story without the consent of the other.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, and John M. O'Brien, for Appellant.

. The height of the building was not limited, in the absence of restrictive words of agreement prohibiting it. (*Mittnacht v. Slevin,* 67 Hun, 315, 316; 92 N. Y. Supp. 131; *Everett v. Edwards,* 149 Mass. 588;[1] *Matthews* v. *Dixey,* 149 Mass. 595, 598, 599; *Tait* v. *Fratt,* 112 Cal. 613; *Brooks* v. *Curtis,* 50 N. Y. 639;[2] *Dauenhauer* v. *Devine,* 51 Tex. 480.[3])

Naphtaly, Freidenrich & Ackerman, for Respondent.

In this case the rights of the parties were definitely defined by the agreement. (*Musgrave* v. *Sherwood,* 60 How. Pr. 339.) The express mention of one story additional implies the exclusion of any other additional story by either party without the consent of the other. (Civ. Code, sec. 1656.)

COOPER, C.—This action was brought by plaintiff for the purpose of enjoining the defendant from adding a seventh story to a party-wall between the lands of the plaintiff and the lands of the defendant. Plaintiff recovered judgment, and this appeal is from the judgment and from an order denying defendant's motion for a new trial. Either party has the right, in the absence of agreement, to increase the height of a party-wall, when it can be done without injury to the adjoining building or impairing the strength of the wall. In this case the parties made an agreement, and the question is as to whether or not the defendant was about to violate the agreement, in erecting the seventh story. The record shows that prior to October, 1892, the plaintiff had erected a five-story brick building upon a lot owned by him, on the northerly line of Ellis Street, in the city of San Francisco, and in the erection of the said building he had constructed a party-wall, one half of which rested upon the westerly line of his lot, and the other half rested upon the easterly line of

---

[1] 14 Am. St. Rep. 462.          [3] 32 Am. Rep. 627.
[2] 10 Am Rep. 545.

a lot to the west, then owned by Charles Goodall and others, the wall running north and south, the center thereof being on the line between the lots. On October 4, 1892, the plaintiff and the owners of the lots on the west entered into an agreement, in writing, which, after reciting the ownership of the respective lots, and the fact that plaintiff had constructed the party-wall at a cost of $5,544.50, provided: "That said wall, as it is now constructed, shall be, so long as it remains, a party-wall; each party to this agreement, their heirs and assigns, shall have free use of said wall as a party-wall to build into and otherwise use as such. Such party-wall shall be kept in repair at the joint and equal expense of the parties hereto, which shall include any damage by fire or earthquake, provided the same can be repaired. Either party shall have the privilege of building an additional story upon said partition-wall, provided the architect of both parties shall first agree that said party-wall will sustain an additional story; and whenever the other party shall use such additional story, then they or he shall pay one half of the cost thereof, and the parties of the first part [Charles Goodall and others], so soon as they shall use said present wall to build into and have constructed their building, of which said wall shall form the easterly side thereof, shall pay the party of the second part the sum of two thousand seven hundred and seventy-two dollars and 75-100 dollars ($2,772.75), the same being one-half the cost of said wall, and said parties of the first part shall accept said sum in full payment thereof."

In March, 1893, the defendant became the owner of the lot on the west, and thereafter entered into a written agreement with plaintiff, which was annexed to the original agreement, and which agreement, after reciting the fact that the architects of the respective parties had agreed that the party-wall would sustain an additional (or sixth) story, provided that either party "may add such additional story to said party-wall, subject to the terms and conditions of the foregoing agreement [the prior agreement], excepting that the further consent of the architects representing the first and second parties hereto to the construction of such sixth story need not be had." The defendant thereupon, and prior to November 27, 1894, constructed a building upon his lot, called

the "Ramona," six stories in height, besides the basement. In building, the defendant underpinned the party-wall and increased its thickness on his own side so as to augment its strength. He then used the party-wall, and increased its height, so as to make his building six stories high, as the agreement provided that he might do. The defendant paid plaintiff $2,772.75, being the one half of the cost of the party-wall for the five stories, as originally built by plaintiff. Plaintiff paid defendant $385.87 for his portion of the cost of the underpinning and strengthening the foundations of the wall. The plaintiff and defendant then entered into an additional (or third) written agreement, which, after reciting the payment of the above sums, and the fact that defendant had raised said party-wall an additional story, at the expense of $464.90, provided that the plaintiff should pay the defendant one half of said last-named sum at such time as plaintiff, his heirs or assigns, "shall use said additional party-wall in the erection of a sixth story of his or their building." The defendant thereafter constructed a sixth story to his building, now called the "Royal House," and used the additional sixth story of the party-wall constructed by defendant. The plaintiff and defendant then each had a six-story building on his own lot, using the party-wall as agreed, and with no question as to their respective rights. In March, 1900, the defendant, without the consent of plaintiff, was intending and threatening to raise said party-wall an additional (or seventh) story, for the purpose of putting an additional story on his said building, and hence this action.

The defendant was bound by the agreement and the subsequent additions thereto, and the effect of the agreement was to limit the party-wall to six stories. The original agreement was for five stories, with a proviso as to the erection of a sixth story. Before a sixth story could be erected the parties had taken the precaution to stipulate that the wall should first be examined by architects to ascertain if it was strong enough to sustain a sixth story. Thus the limit of the wall, by the agreement, was six stories. No provision was made as to any other or further increase in the height of the wall. When the parties thus agreed to a five-story partition wall, and the conditions upon which a sixth might be built thereon, it is evident that they did not have in mind any further or ad-

ditional story. They expressed what they intended to do, and intended nothing more than they expressed. They made an agreement, and, by the agreement, limited the height of the building. The plaintiff is the owner of his own land, and he owns downward to the center of the earth, and upward to the sky. By the agreement he gave the defendant an easement to that portion of his land upon which the party-wall rests, and to no other portion. He conveyed that easement to a height of six stories, and no more. Nothing can be implied from the agreement except the grant measured by its terms. The extent of defendant's easement, for the purpose of a party-wall, is defined and measured by the agreement. Plaintiff owns the space on his own land above the six stories by the same title that he owns the remaining portions of his lot. He has not conveyed it to defendant. He cannot be deprived of this property at the volition of defendant without due process of law. An agreement to build a party-wall, with no limitation as to its height, would give the right, by implication, to either party to build it as high as would be necessary for the purposes for which it was to be used, provided it could be done without injury or danger to the property of the other owner. An agreement to build a party-wall for a height defined in the agreement does not give the right by implication to build it higher. The agreement was binding upon the parties. We cannot agree with defendant's counsel that the essence of the agreement as to the party-wall was its power to sustain, and not its height. The right to construct the sixth story was expressly made to depend upon the power of the wall to sustain such story. All the material portions of the agreement were of its essence.

It follows that the judgment and order should be affirmed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.

Hearing in Bank denied.