# Houston Borough, Appellant *v.* Washington & Canonsburg Railway Company.

*Street railways—Electric Light, Heat and Power Companies—Boroughs—Borough streets—Right to string wires—Act of March 19, 1903 P. L. 34.*

Under the Act of *March 19, 1903, P. L. 34,* an electric street railway company has a right to string its wires within the limits of a borough upon the poles of an electric light, heat and power company under a contract with the latter although in so doing its wires are located on streets occupied by poles of the light, heat and power company but not part of the route of the railway company or occupied by its tracks and a bill in equity by the borough seeking an injunction to restrain such action will be dismissed where there is no violation of the provisions of either the ordinance granting permission to the railway company to occupy the borough streets or that granting permission to the electric light, heat and power company, and where the traveling public on the different streets would be interfered with just the same and for the same distance whether the line was strung on the poles of the railway company following the line of its track or on the poles of the electric light, heat and power company along its route.

Argued Oct. 25, 1911. Appeal, No. 104, Oct. T., 1911, by plaintiff from decree of C. P. Washington Co., No. 1946 in Equity, dismissing bill in equity in case of Borough of Houston v. Washington & Canonsburg Railway Company and Pittsburgh Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

MCILVAINE, P. J., filed the following opinion:

FINDINGS OF FACT.

1. The plaintiff is a municipal corporation, having been chartered by a decree of the court of quarter sessions of this county on May 13, 1901.

2. The Washington & Canonsburg Railway Company is a corporation which holds its charter under the provisions of the Act of Assembly approved May 14, 1889, P. L. 211, and some years ago constructed an electric street railway from Washington through the borough of Houston to the town of Canonsburg, a distance of about nine miles. The Pittsburgh Railways Company is a corporation of similar character, and under a contract with the first named company operates its road from Washington through the borough of Houston to Canonsburg.

3. The Canonsburg Electric Light, Heat & Power Company is a corporation having its office in the borough of Canonsburg and maintains electric lines from Washington through Houston to Canonsburg for the purpose of supplying light, heat and power to those who may see fit to patronize it.

4. Two of the streets in Houston borough which run north and south and parallel to each other are known respectively as Grant Street and Pike Street; two other of the streets of the borough which run east and west and parallel to each other, crossing the first two named streets, are known respectively as Main Street and North Avenue. The Washington & Canonsburg Railway Company's track going from Washington enters the south side of the borough of Houston on Grant Street and runs north to Main Street where it turns at right angles onto Main Street and runs east to Pike Street where it turns to the north and runs along Pike Street on its way to Canonsburg, passing over North Avenue. The Canonsburg Electric Light, Heat & Power Company's poles and lines also enter the south side of the borough of Houston on Grant Street, run alongside of

the Electric Railway Company's track down Grant Street, passing over Main Street and running to North Avenue, where they make a turn to the east and run to Pike Street and there again follow the line of the railway company's track. The distance between Grant Street and Pike Street is about 315 feet; the distance from Main Street to North Avenue is approximately 1500 feet.

5. The defendant companies' franchise in the borough of Houston was given by an ordinance duly passed which is known in the ordinance book as Ordinance No. 10, and grants to the Washington & Canonsburg Railway Company the privilege to enter upon, use and occupy for the purpose of its railway, the following described route in the said borough of Houston: Grant Street from the southern entrance to Main Street, thence along Main Street to Pike Street, and thence along Pike Street to the northern boundary of the borough. The words of the first section of the ordinance which are particularly relevant to this case are as follows: "to construct, maintain and use for the term mentioned in its charter, a proper street railway track, with the necessary sidings and turnouts, the right to use electricity or other motive power, except steam or horse power, on the whole or any part of its line hereby authorized to be constructed, and also to erect, maintain and use on said streets an overhead electric system for the supply of motive power and to use thereon such overhead system and to complete said electric system by suitably connecting the rails of the road at their ends or by connecting the rails with supplemental ground wires." One of the conditions on which the franchise was granted was that "the overhead wires shall be supported by smooth, symmetrical wooden poles which shall be kept neatly painted and be placed along the curb lines and so far as possible on property lines."

6. The franchise granted to the Canonsburg Electric Light, Heat & Power Company is found in an ordinance which in the ordinance book of the borough is No. 27. The first section of that ordinance provides "that authority be and is hereby granted to the Canonsburg Electric Light, Heat & Power Company, its successors and assigns, to construct, operate and maintain lines for the transmission of electricity. for furnishing light, heat and power, including the necessary poles, wires and fixtures, upon, along and over the streets, lanes, alleys and highways within the limits of the borough of Houston, subject to the general regulations of said borough." The second section provides that "all poles erected under this ordinance shall not be less than twenty-five feet in length from the curb line and located under the direction and supervision of the street committee of council and where required by said committee and in constructing said line and making repairs to the same the work shall be done in such manner as to interfere as little as possible with the free use of the streets, alleys and highways of said borough;" and provides further "that no wire shall be strung under the provisions of this ordinance nearer to the surface of the ground than twenty-five feet, except by special permission in writing from the street committee." Under this ordinance and under the supervision of the street committee or commissioners of the' borough, the electric light, heat and power company constructed its lines from the south line of the borough along Grant Street to North Avenue, down North Avenue to Pike Street and from Pike Street to the northern boundary of the borough, and have been, since its construction some months before the filing of this bill, operating said line.

7. On the 27th day of August, 1909, the Canonsburg Electric Light, Heat & Power Company entered into a written contract with the Washington & Canonsburg Railway Company,, whereby the right was given to the

electric light and power company to erect its poles along the line of the railway company's track and on their right of way between Washington and Houston borough and between Houston borough and Canonsburg. The fifth paragraph of that agreement, which covers a number of matters not relevant to this case, provides as follows: "The party of the first part (that is the electric company) hereby agrees to permit the party of the second part (that is the railway company) to erect upon the main line of poles of the party of the first part (that is the electric company) carrying its high tension line or lines through the Borough of Houston not to exceed two sets of three wires each in the same relative location on such poles as the high tension lines that the two companies occupy along the route from Tylerdale to Meadowlands upon condition that the party of the second part pays the party of the first part for the cost of all the poles and the setting of the same which the party of the second part thus occupies in said borough, and the party of the second part is to pay one-half the expense of the cross arms necessary for supporting said wires and pay the expense of the maintenance of any of the poles of the party of the first part which the party of the second part thus occupies in Houston borough."

8. Some time before the filing of plaintiff's bill the Pittsburgh Railways Company which operates the street railway line, desired to string another high tension line through the borough of Houston and in doing so, in place of following the line of their track from the corner of Main and Grant Street down Main Street and along Pike Street to the corner of Pike Street and North Avenue, they strung the line under the contract just referred to on the poles of the electric light, heat and power company which were erected from the corner of Main and Grant Streets along Grant Street to North Avenue, and down North Avenue to Pike Street where connection was made with the line along the

track of the railroad. The stringing of this line was finished (but no current of electricity passed through it) on the second day of September, 1910, the same day that the plaintiff presented its injunction bill in this case, praying that an injunction be awarded preliminary to final hearing, and thereafter to become perpetual restraining the said Washington & Canonsburg Railway Company and the said Pittsburgh Railways Company, defendants, from attaching their wires or the wires of either of them to poles or otherwise permanently locating them on or within that portion of Grant Street in the said Borough of Houston lying between Main Street and North Avenue and that portion of North Avenue lying between Grant Street and Pike Street in said borough, and from passing currents of electricity through the said wires while located on the portions of streets last above designated; and also praying that the said defendants be required to remove the wires already strung as aforesaid along said portions of Grant Street and North Avenue. The Court, on the presentation of the plaintiff's bill and the necessary injunction affidavits and bond, granted the usual five day injunction, and at the time fixed for hearing the plaintiff moved the court to continue the injunction granted as a preliminary injunction until final hearing, and the question now for decision on the facts found is whether or not this motion should be granted.

## CONCLUSIONS OF LAW.

First. That the contract of August 27, 1909, by and between the Canonsburg Electric Light, Heat & Power Company and the Washington & Canonsburg Railway Company referred to in the seventh finding of fact, was authorized by the provisions of the Act of Assembly approved March 19, 1903, P. L. 34; and under that contract the defendants had a right to string their wires upon the poles of the electric light, heat and

power company from Main Street along Grant Street and down North Avenue to Pike Street, it not appearing in the evidence that in stringing said wire they in any way violated any of the provisions of ordinances Nos. 10 or 27.

Second. That the plaintiff's motion to continue the preliminary injunction until final hearing should be refused.

### COMMENTS.

The Act of 1903 provides as follows: "Section 1. Be it enacted, &c., That it shall and may be lawful for corporations for what purpose soever formed and lawfully using electrical current within this Commonwealth, to enter into contracts with each other for the use of the same poles, wires and conduits, or for the purchase and sale of electrical current, or for the lease and operation of each other's systems, on such terms and conditions as they may agree upon; Provided, That nothing in this act contained shall be construed to give to any company any rights to erect or maintain poles, wires or conduits upon any street or road not already so occupied, unless the consent of the local authorities shall have been first obtained."

It will be observed: (1) That both of these corporations had a right to string wires on poles through the borough of Houston for the purpose of carrying electric currents for the furnishing of power.  (2) That the distance from the corner of Main Street and Grant Street to the corner of North Avenue and Pike Street was about 1800 feet, whether you went down Main Street and along Pike Street the way the railway track ran, or down Grant Street and along North Avenue to Pike Street the way the electric light, heat and power company's poles ran.  (3) That the railway company had a right to string such wires as they thought were necessary to carry the current required to operate their road between the points named, and also that the elec-

tric light, heat and power company had a right to string similar wires to carry electricity to furnish power such as they might think was necessary. (4) That the routes from the corner of Main and Grant Streets to the corner of Pike Street and North Avenue, whether you went by the way of Main Street and Pike Street or went by the way of Grant Street and North Avenue, had erected thereon and were occupied by poles and wires used for one and the same purpose.

This being the case, the traveling public on these different streets would be interfered with just the same and for the same distance whether the line was strung on the poles of the railway company following the line of their track or on the poles of the electric company along the route that they occupied, and in our opinion what was done by these two companies under the contract that existed between them in no way conflicted with the provisions of the Act of 1903 which provides that nothing in the act contained shall be construed to give any company any rights to erect or maintain poles, wires or conduits upon any street or road not already so occupied, unless the consent of the local authorities shall have been first obtained. Clearly, the two routes to which we have referred were already occupied by the two contracting parties and occupied for one and the same purpose, to wit, the carrying of electric wires on poles for the purpose of transmitting electricity which was to be used to furnish power, and as there is no allegation in the bill and as there was no evidence produced at the hearing which shows that this wire of the railway company which was strung on the poles of the electric company was strung in a manner to offend against the terms of either of the ordinances to which we have referred, we are clearly of the opinion that the plaintiff is not entitled to the preliminary injunction for which it prays.

Exceptions to the adjudication were dismissed and a decree filed dismissing the bill.

*Error assigned* was decree dismissing the bill.

*Irwin Cummins,* with him *Boyd & E. E. Crumrine,* for appellant.—Street railway companies, incorporated under the Act of 1889 have no legal right to enter upon and occupy the streets of a borough without having first procured municipal consent so to do is well established in a long line of precedents: Larimer & L. St. Ry. Co. v. Larimer St. Ry. Co., 137 Pa. 533; Athens, Sayre & Waverly Electric St. Ry. Co. v. Sayre Borough, 156 Pa. 23; Allegheny v. Millville, Etna & Sharpsburg St. Ry. Co., 159 Pa. 411; Lehigh Coal & Navigation Co. v. Inter-Country Street Railway Co., 167 Pa. 75; Jordan v. Wash. & Canonsburg Ry. Co., 25 Pa. Super. Ct. 564; Ohio River Junction Railroad Company v. Freedom & Conway Electric Street Railway Co., 204 Pa. 127. Municipal consent to the construction of a street railway does not include subsequent extensions; consent must be obtained for each extension: Coatesville & Downington Street Ry. Co. v. West Chester Ry. Co., 206 Pa. 40; Lawrence County v. New Castle Electric Street Ry. Co., 8 Pa. Super. Ct. 313.

*R. W. Irwin,* with him *James A. Wiley,* for appellee, cited: Com. v. R. R. Co., 27 Pa. 339; Philadelphia & Trenton R. R. Co., 6 Wharton 25; Penna. R. R. Co.'s App., 115 Pa. 514.

PER CURIAM, January 2, 1912:
The decree dismissing the plaintiff's bill is affirmed on the opinion of Judge McIlvaine.