[Civ. No. 7200. Third Dist. Jan. 22, 1946.]

SACRAMENTO MUNICIPAL UTILITY DISTRICT, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, Chaffee E. Hall, Robt. H. Gerdes, Kent A. Sawyer and Hall, Henry & Oliver for appellant.

Downey, Brand & Seymour, Stephen W. Downey and Martin McDonough for Respondent.

PEEK, J.—This is an appeal by Pacific Gas and Electric Company (hereinafter sometimes called the company) from a judgment of the superior court determining the right of respondent Sacramento Municipal Utility District (hereinafter sometimes called the district) to condemn for public use "lands, properties and rights" of the company described in the judgment, and fixing the compensation to be paid therefor. These lands, properties and rights consist in general of lands, substations, pole-lines, duct-lines, franchises, rights of way and electrical equipment (or of fractional interests therein or rights of use thereof), constituting parts of the electrical distribution system of the company within the boundaries of the district and also parts of the electrical distribution system of the company outside the boundaries of the district.

Respondent Sacramento Municipal Utility District was organized under the Municipal Utility District Act (Stats. 1921, p. 245, ch. 218; Deering's Gen. Laws, Act 6393), pursuant to constitutional authorization (Const., art. XI, § 19), for the purpose of supplying electrical energy to the inhabitants of the district and for any other purpose found to be properly incidental thereto. The boundaries of said district comprise all of the county of Sacramento and part of the county of Placer, including the cities of Sacramento and North Sacramento, excepting therefrom an area comprising the Municipal Utility District of Carmichael. In 1934 the voters of the respondent district authorized it to incur a bonded indebtedness of $12,000,000, for the acquisition of an electric distribution system to supply its inhabitants with electricity. Immediately following the bond election and in accordance with

the provisions of said Municipal Utility District Act, the district instituted an action in the Superior Court of Sacramento County to determine the validity of the bonds. The appellant company, which owns the existing electric distribution system in the area, intervened in that proceeding and challenged the validity of the bonds on numerous grounds. The judgment of validation rendered by the trial court was affirmed by the Supreme Court, on April 26, 1936. Thereafter, the company commenced injunction proceedings in the federal district court, a judgment adverse to it was affirmed by the circuit court of appeals, and its petition for certiorari was denied by the United States Supreme Court. On May 21, 1938, the district, pursuant to a resolution of its board of directors, instituted this proceeding in eminent domain to condemn and acquire that portion of the distribution system of the company which serves the respondent and the Carmichael districts, by filing a petition with the Railroad Commission requesting a valuation of the properties sought to be acquired. An order to show cause was served on the appellant, and on the American Trust Company and the City Bank Farmers Trust Company by virtue of their interest in the properties under certain deeds of trust. The three companies appeared and filed a motion to dismiss. Attack was made, among other things, upon the sufficiency of the description of the properties sought and on the constitutionality of the Public Utilities Act, particularly section 47 (b), under which the proceeding was being taken. The commission denied the motion (41 C.R.C. 633), took evidence, and issued its finding and award, authorizing the district to take possession of the properties upon the payment of $11,632,000 (44 C.R.C. 467, 490.) Both parties filed petitions for rehearing, appellant reiterating the points made in its return to the order to show cause. Both petitions were denied. The district then filed a petition for writ of review which was denied by the Supreme Court on March 1, 1943 (S.F. 16887). The company filed a brief in opposition to respondent's petition but took no affirmative steps of its own to secure a review of the order. Thus it apparently acquiesced in the commission's determination.

On January 21, 1943, pursuant to section 47 (b) of the Public Utilities Act (Deering's Gen. Laws, Act 6386; Stats. 1915, p. 115), the district filed a complaint in the superior court praying for a judgment of condemnation, the company having refused to stipulate to accept the compensation fixed

by the commission. The company's demurrer to the complaint was overruled. It then answered, and, at the conclusion of the hearing, findings of fact, conclusions of law and judgment were entered in favor of the respondent district. Pursuant to stipulation, the judgment provided that the award should be paid to the American Trust Company as trustee for the company.

The briefs filed on both sides show conspicuous care and ability, commensurate with the importance of the case, and, in the main, discuss the three principal grounds urged by appellant for reversing the judgment. However, included therein are additional points which do not fall strictly within the declared scope of any of the chief topics. The main grounds are:

1. The insufficient or defective character of the description of the properties involved in the proceedings;

2. The want of power in the respondent district to condemn that part of the company's distributing system which is in the Carmichael area;

3. The absence of a right in the respondent district to condemn a mere use of certain poles as distinguished from the poles themselves.

While a fourth main ground was advanced in appellant's briefs (the alleged unconstitutionality of section 47 (b) of the Public Utilities Act), it was abandoned at the time of oral argument.

As the proper principles to be applied in eminent domain proceedings depend largely on the statutory provisions under which the proceeding is brought, it is appropriate at this point to refer to the applicable constitutional and statutory provisions.

Section 14 of article I of the Constitution of California reads in part:

"Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner."

Section 8 of article XII of the Constitution provides that:

"The exercise of the right of eminent domain shall never be so abridged or construed as to prevent the Legislature from taking the property and franchises of incorporated companies and subjecting them to public use the same as the property of individuals ... "

The Municipal Utility District Act, section 12, provides in part:

"Any municipal utility district incorporated as herein provided shall have power:

. . .

"Fourth—To . . . condemn in proceedings under eminent domain . . . real and personal property of every kind within or without the district necessary to the full or convenient exercise of its powers . . ."

Section 23a of article XII of the Constitution of California reads as follows:

"The Railroad Commission shall have and exercise such power and jurisdiction as shall be conferred upon it by the Legislature to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings by the State or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district, and the right of the Legislature to confer such powers upon the Railroad Commission is hereby declared to be plenary and to be unlimited by any provision of this Constitution. All acts of the Legislature heretofore adopted which are in accordance herewith are hereby confirmed and declared valid."

The present proceeding was instituted under the provisions of section 47 of the Public Utilities Act, which section, as amended in 1913 (Stats. 1913, p. 683, chap. 339), was confirmed and declared valid by said section 23a of article XII of the Constitution.

Subdivision (b) of section 47 of the Public Utilities Act provides, in part, that any political subdivision, including a public utility district or any other public corporation, may file with the Railroad Commission a petition setting forth its intention to acquire under eminent domain proceedings "the lands, property and rights of any character whatsoever of any public utility, or any part or portion thereof." Upon the filing of the petition, the Railroad Commission is charged with the duty, after appropriate proceedings, to fix the just compensation to be paid by the political subdivision for said properties or portion thereof, and its finding determining the compensation to be so paid "shall be final and shall not be subject to modification, alteration, reversal or review by any court of this state." Section 67 of the act provides in part: "The findings and conclusions of the commission on

questions of fact shall be final and shall not be subject to review except as hereinafter provided [referring to review by the Supreme Court]; such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination."

Appellant first assails the sufficiency of the description of the property involved in these proceedings in three respects:

1. "Because the complaint fails to show the location, general route and termini of rights of way sought and because it is not accompanied by a map thereof," as provided in the Code of Civil Procedure, section 1244, subdivision 4.

2. "Because the properties described in the judgment cannot be identified," and

3. "Because the amended petition to the Railroad Commission, the complaint and the judgment each describes properties different from the others."

In considering these questions, the fact may not be overlooked that the properties involved herein are extensive and extremely complex. They comprise an integrated electric distributing system covering an area of approximately 640 square miles and serving a population, at the time of the filing of the petition in 1938, of about 170,000 persons. The judgment sets forth with particularity and by metes and bounds the boundaries of the system and describes in great detail the properties to be taken, incorporating by reference a number of printed volumes containing more than two thousand pages of descriptive material. Said properties consist of both real and personal property and intangibles as well as tangibles, such as franchises, easements and the sundry rights, interests and privileges which go to make up a distribution system of this kind.

With respect to the objection that the description of the properties as contained in the judgment does not conform to the requirements of the Code of Civil Procedure, section 1244, subdivision 4, it is to be noted that such subdivision relates to a case where a right of way is sought. Respondent district is not seeking a right of way but an integral part of an electric distributing system already established, the location, general routes and termini of which are well known to the condemnee.

In the second place, this is a proceeding under section 47 (b) of the Public Utilities Act, which has been held to

be a special proceeding in eminent domain and one which controls over a general code provision that is not clearly applicable to such a proceeding. (*Marin Mun. Water Dist.* v. *Marin Water & Power Co.,* 178 Cal. 308, 314, 317 [173 P. 469].) Section 47 (b) requires only that the petition shall contain "a description of the lands, property and rights, or of the part or portion thereof, which the political subdivision intends to acquire." The filing of the petition is the initial step in this special proceeding (*Marin Mun. Water Dist.* v. *Marin Water & Power Co., supra*), and therefrom the Railroad Commission derives its authority to evaluate the property, it being the office of the superior court to determine whether the political subdivision has the right and power under the law to take "said lands, property and rights, or said part or portion thereof" (§ 47 (b) 8), that, is the lands and property which the petitioner avowedly intends to acquire and which the Railroad Commission has evaluated accordingly.

Where the commission finds that the description is sufficient to give it jurisdiction to make the valuation, and the same description is contained in the complaint filed with the superior court, it would seem to follow that such description is sufficient to give the superior court jurisdiction to perform its special duties and sufficient also for the purposes of the judgment.

What we have said with regard to the inapplicability of section 1244, subdivision 4, Code of Civil Procedure, pertains likewise to the requirement of said section that a map accompany the complaint. In fact this very question appears to have been decided (at least indirectly) by the Supreme Court on a petition for a writ of review of an award of the Railroad Commission (L.A. No. 13620). There the petitioner complained of the illegibility of the maps which described the properties. In its briefs the commission took the position that "the addition of the maps in question . . . was unnecessary and surplusage, in any event, since the properties were adequately described without the aid of the maps. . . ." Although the Supreme Court denied the petition without opinion, it thereby inferentially approved the position taken by the commission. (See *Southern Cal. Edison Co.* v. *Railroad Com.,* 6 Cal.2d 737, 756 [59 P.2d 808].)

By what has been said in the course of this discussion we do not wish to be understood as intimating that the location, general route and termini of any rights of way incident

to the system intended to be acquired by the respondent district are not adequately shown in the description contained in the complaint herein. On the contrary it appears that these facts are determinable, and have in fact been determined, by skilled persons from the same description as that contained in the complaint—and this is all that is necessary under the code. As the court stated in the case of *County of Madera* v. *Raymond Granite Co.*, 139 Cal. 128, 133, 134 [72 P. 915, 989]: "A surveyor could with the description and the map have no difficulty in definitely locating the road, and this is sufficient." ▮ Likewise the maxim "That is certain which can be made certain" (Civ. Code, § 3538) applies to a petition or complaint in eminent domain proceedings. (Lewis on Eminent Domain, 2d ed., vol. 2, p. 827, § 350.)

▮ As far as the general sufficiency of the description to identify the property under condemnation is concerned (and while appellant attacks the judgment of the superior court herein in this regard, it would appear to be immaterial whether the attack is made on the judgment or the complaint, or on the order of the commission or the petition filed therewith, since the description is virtually the same throughout the proceedings), we are of the opinion that inasmuch as this question has been decided against appellant by the commission, it must be deemed to be set at rest and cannot be reexamined by this court, just as it was not properly put in issue before the superior court.

In this regard it should be noted that the commission in its interim opinion (41 C.R.C. 633, 634) stated: "The various properties sought to be valued are specified with great particularity"; and in its final opinion (44 C.R.C. 467, 468) used this language: "However, the record is clear to the effect that the properties described in the petition, as amended, have not only been identified and inventoried by the Commission's Valuation Division, but that the properties, so inventoried, are the properties sought by the district and described in the petition, as amended."

▮ Logically, a correct description of the property to be condemned is a necessary predicate for a correct valuation thereof. Therefore a finding by the Railroad Commission that the properties to be taken are of a specified value necessarily contains the implied finding that they have been accurately identified—in short, that the description is sufficient. In the case of *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597,

at page 615 [57 P. 585], the Supreme Court stated: "Undoubtedly, it was necessary that the jury should be correctly instructed as to the quantity and extent of the estate and interest of the defendants in the land in order that they might correctly estimate its value. . . . These were an essential preliminary to the judgment. . . ." ▮ The doctrine of implied findings is well established in our law. (*Haigler* v. *Donnelly*, 18 Cal.2d 674, 677, 678 [117 P.2d 331]; *Rankin* v. *Newman*, 107 Cal. 602, 608 [40 P. 1024, 41 P. 304]; *Bank of Tehama Co.* v. *Crumley*, 74 Cal. 461, 462 [16 P. 207]; *Cole* v. *Bacon*, 63 Cal. 571, 574; *Jones* v. *Pleasant Valley Canal Co.*, 44 Cal.App.2d 798, 804-805 [113 P.2d 289]; *National Funding Corp.* v. *Stump*, 57 Cal.App.2d 29, 35 [133 P.2d 855].) ▮ It must follow also that, having the power to make an implied finding with regard to the sufficiency of the description, the Railroad Commission had the authority to make the express finding which it made on that issue in the present case.

Indeed, that the Railroad Commission does have jurisdiction to decide this question appears to have been directly ruled on by the Supreme Court in the case of *Southern Cal. Edison Co.* v. *Railroad Com.*, L. A. 13620, wherein the question of the sufficiency of the description was squarely put in issue and said court in effect confirmed the right of the commission to determine the same when it denied a petition for a writ of review. (See *Southern Cal. Edison Co.* v. *Railroad Com.*, *supra*, at p. 742.)

▮ It is clear that under the Public Utilities Act the Railroad Commission in making its appraisement of property to be condemned acts judicially, and its findings and determination are binding and conclusive and may not be inquired into, save by the Supreme Court to a limited extent on timely application for review. (*Southern Cal. Edison Co.* v. *Railroad Com.*, *supra*, at p. 749; *Marin Mun. Water Dist.* v. *Marin Water & Power Co.*, *supra*, at pp. 311, 317.) The same result would follow under the general doctrine of res judicata (*Western Canal Co.* v. *Railroad Com.*, 216 Cal. 639, 645-646 [15 P.2d 853], cert. den. 289 U.S. 742 [53 S.Ct. 688, 77 L.Ed. 1489]; *Blymer* v. *Sutter Butte Canal Co.*, 217 Cal. 572, 577 [20 P.2d 320]; *People* v. *Lang Transportation Co.*, 217 Cal. 166, 169-170 [17 P.2d 721]; *City of Oakland* v. *El Dorado Terminal Co.*, 41 Cal.App.2d 320, 326 [106 P.2d 1000]; *Goodspeed* v. *Great Western Power Co.*, 33 Cal.App.2d 245, 265 [91 P.2d 623, 92 P.2d 410]); and it would be immaterial

whether the finding and determination were express or implied. (Freeman on Judgments, 5th ed., vol. 2, pp. 1465-1468, § 693.)

It seems apparent therefore, that there was no real issue before the superior court as to the sufficiency of the description to identify the properties involved in these proceedings, and that anything relating to such an issue in its findings, conclusions, or judgment may and should be disregarded. (*Goodspeed* v. *Great Western Power Co., supra,* at p. 265.)

 But more than this—if the description had been insufficient to identify the properties and, notwithstanding such fact, the commission had gone ahead and attempted to value them, it could not be said that the commission was regularly pursuing its authority. This would be the case, for instance, if the commission only *thought* it was evaluating the properties sought to be condemned, as appellant contends in its reply brief. Yet, not only did appellant refrain from attacking the procedure of the commission by an application for a writ of review to the Supreme Court, but, on the contrary, appellant actively resisted respondent's application for such a writ, insisting that the commission had regularly pursued its authority and had arrived at the valuation by the application of correct principles. (Appellant's Brief in Opposition to Writ in the case of *Sacramento Municipal Utility District* v. *Railroad Com.,* S. F. 16887.) Respondent's petition for the writ of review was denied March 1, 1943, and appellant's position inferentially sustained. This rule applies likewise to a number of highly technical objections raised by appellant to the sufficiency of the description of certain franchises, easements and interests therein, including the objection to the use of the term "or" instead of "and," in particular cases, and the occasional use of the expression "and/or."

Therefore, having taken the position before the Supreme Court which we have indicated above, and having successfully maintained it, appellant may not now be heard to take a contrary position, but is precluded from attacking directly or collaterally the validity of the proceedings before the commission, including the sufficiency of the description and identification of the properties involved therein. (*Estate of Davis,* 38 Cal.App.2d 579, 584 [101 P.2d 761, 102 P.2d 545]; *John H. Spohn Co.* v. *Bender,* 18 Cal.App.2d 447, 452 [64 P.2d 152]; *Donegan* v. *City of Los Angeles,* 109 Cal.App. 673, 685 [293 P. 912]; *California Land Co.* v. *Corte Madera,* 97 Cal.App.

393, 396 [275 P. 866]; 31 C.J.S. p. 375, § 117; 21 C.J. pp. 1223, 1228, §§ 227, 232; 19 Am.Jur. pp. 704-708, § 72.)

The last attack made on the description of the properties involved herein is to the effect that said description should have been changed to meet the changing conditions that have occurred since the time of the original appraisal.

While ostensibly this is an attack on description, actually, as developed by appellant, it is an attack on the valuation fixed by the commission, or more precisely, on the method of valuation provided by the statutes, it being appellant's contention apparently that the properties should be revalued as of a time subsequent to the making of the original inventories; namely, the time of the filing of the complaint and the time of the filing of the judgment.

With respect to the proposition directly advanced. by appellant—that the description in the judgment should vary from that in the petition and complaint, to take care of subsequent changes—there is no merit whatever, although it does amount to a concession that the property which the district will be entitled to take over is the system in its altered condition, not confined to the properties described in the petition, complaint and judgment.

That the description as contained in a judgment of condemnation must follow that of the complaint or award is the universal rule in eminent domain proceedings. (29 C.J.S. p. 1360, § 322; *County of Madera* v. *Raymond Granite Co., supra,* pp. 133-134; *Hoch* v. *Candler,* 190 Ga. 390 [9 S.E.2d 622, 625]; *Chicago etc. Ry. Co.* v. *Rausch,* 245 Ill. 477 [92 N.E. 300, 303]; *Chicago etc. R. Co.* v. *City of Chicago,* 132 Ill. 372 [23 N.E. 1036, 1037].)

Insofar as appellant's argument assails the validity of the rule that the time as of which values are to be determined in a proceeding of this character is the date of the application to the Railroad Commission (or of the hearing thereon), subject to a supplemental valuation to take care of subsequent changes, the answer has been furnished by the decided cases in a very definite manner. (*City of Pasadena* v. *Porter,* 201 Cal. 381, 390 [257 P. 526, 53 A.L.R. 679]; *Marin Mun. Water Dist.* v. *Marin Water & Power Co., supra,* at p. 314; *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299, 318-319 [283 P. 298], appeal dismissed for want of a substantial federal question, 283 U.S. 787 [51 S.Ct. 348, 75 L.Ed. 1415].) Therein it is made clear that it is entirely compe-

tent for the Legislature to fix the time when the right to compensation shall be deemed to have accrued as the time of the institution of the proceeding, and that the Legislature also may at will change the designation of that time.

In a case where the properties of a going utility are being condemned, it is inevitable that the properties as described in the petition will have undergone some changes by the time they are actually taken over by the condemnor. To obviate this as far as possible, it is the practice of the Railroad Commission (of which we may take judicial notice) to prepare the inventories so as to reflect the changes as of the time of such preparation and to see that descriptions are amended accordingly. (See C.R.C. No. 29266, reported in 40 C.R.C. 204, 208; C.R.C. No. 24434, reported in 37 C.R.C. 117, 119, petition for writ of review denied, L. A. 13619.) This was done in the present case. (44 C.R.C. 467.)

The second method of compensating for the discrepancy mentioned is provided by the statute itself, by furnishing a special procedure whereby increases or decreases may be estimated long after the original appraisement has been made, and the amount of the compensation may be adjusted accordingly. In the present case the groundwork has been laid for a modification of the award. The judgment of the trial court designates the sum which is to be paid for "said" lands, properties and rights (i. e., those described in the judgment which are the same as those that were described in the complaint and therefore in the petition). It then specifically provides: "which sum is subject to modification by reason of such increase or decrease as may hereafter be certified to this Court by the Railroad Commission of the State of California as provided by Part (9) of Section 47 (b) of the Public Utilities Act." The part of the act thus referred to furnishes a complete formula for the determination and valuation of the betterments and improvements that have been added to the system since the taking of the original inventories. (See 21 C.R.C. 658.)

It thus appears that while the properties described in the judgment are the properties which the condemnor set out to condemn and which were appraised in accordance with the description, the condemnee may be compensated on the basis of the properties which are actually to be taken over by the condemnor. No injustice is evident either in the mode

of procedure which has been provided or in the result to be attained thereby.

Another principal objection to the judgment raised by appellant relates to the power of respondent district to condemn those properties of the company which lie in the Carmichael area outside the district and which comprise about 1.25 per cent of the area served by the total integrated system. Originally the Carmichael district was organized as a public utility district as well as an irrigation district, but it does not furnish its inhabitants with electric service, nor does it own or operate any facilities for doing so, such service being furnished by the company. This area is entirely surrounded by the property of respondent district. The findings show that if the properties in Carmichael are not condemned, service to that area would be cut off and service to some consumers in the respondent district would be terminated and service to others impaired, although equivalent service within Carmichael could be restored by an expenditure of $42,300 and equivalent service within the district could be restored by an expenditure of $17,000. The evidence shows that the portion of the company's system situated within the Carmichael area is an integrated part of the system serving respondent district.

There is no constitutional objection to the condemnation of rights of way in or over political subdivisions outside the corporate limits of the public corporation seeking to exercise the right of eminent domain (*Los Angeles* v. *South Gate*, 108 Cal.App. 398 [291 P. 654] [hearing in Supreme Court denied]; *Los Angeles* v. *Huntington Park*, 32 Cal.App.2d 253 [89 P.2d 702]), and a municipal corporation may condemn property wholly outside its corporate limits in order to serve its inhabitants. (See *City of Los Angeles* v. *Aitken*, 10 Cal.App.2d 460 [52 P.2d 585] [hearing in Supreme Court denied].)

Likewise, a part of an electric distributing system can be condemned by a political subdivision, although the balance of the system is situated outside the boundaries of such subdivision. (*Southern Cal. Edison Co.* v. *Railroad Com., supra,* at pp. 742-743.)

It also has been held to be no obstacle to a condemnation that the facilities of the corporate condemnor will be used in part to serve territory outside the corporate limits, where such use is incidental to the prinicpal use. (*Southern Cal.*

*Edison Co.* v. *Railroad Com.,* L. A. 13620, denying a petition for a writ of review.)

Moreover, the Constitution expressly authorizes a political subdivision, such as respondent district herein, to furnish services for light, heat and power to inhabitants outside its boundaries. (Const., art. XI, § 19.) This section of the Constitution is self-executing, and the Legislature could not, even if it would, limit such authorization. (*City of Mill Valley* v. *Saxton,* 41 Cal.App.2d 290, 294-295 [106 P.2d 455].)

One of the contentions advanced by appellant in this connection, to the effect that it is only the surplus energy that may be used for the service of persons outside the district, does not find support in the authorities. It is held that this is not the theory on which such service may be provided, but it is rather the theory that in taking over facilities serving another area, the district must, on principles of fairness and justice, continue the service which was furnished outside the district, where this can be done efficiently and economically. "In these operations the municipality is not selling surplus or excess waters to the prior users. The purchase of the system is impressed with a trust. . ." (*Durant* v. *City of Beverly Hills,* 39 Cal.App.2d 133, 137 [102 P.2d 759].) In another case more directly in point, and dealing with an eminent domain proceeding, the Supreme Court disposed of a contention similar to the one advanced by appellant based on asserted limitations contained in the Municipal Utility District Act as well as the general code provisions, in part as follows: "It is also further alleged that about ninety-three per cent of the water is supplied to people within the district and about seven per cent to people outside the district. Whether or not it be the declared policy of the district to continue such outside use, it would be its legal duty to do so as the successor of the East Bay Water Company. . . . The petitioner has the power to acquire the works and system outside the district. If it should do so it would acquire such property subject to the burden or servitude of continuing the service and on no just principle could it continue to hold the property outside the district discharged thereof. . . . To acquire the property with the burden so attached would not, therefore, be in excess of the powers of the district." (*East Bay Mun. Utility Dist.* v. *Railroad Com.,* 194 Cal. 603, 620-621 [229 P. 949].)

The foregoing decisions appear to dispose of appellant's contention that the broad grant of power contained in the Municipal Utility District Act, section 12, subdivision 4, to condemn "property of every kind . . . without the district" should be deemed to be limited by subdivision 5 which authorizes a disposition of surplus energy to persons, firms and corporations outside the district. Even without the aid of these precedents, from a reading of the entire section with a view to determine the purposes and objects of the act it is quite evident that the purpose of the Legislature in enacting said section of the act was to give plenary powers to municipal utility districts within the broad confines of constitutional authorization; to allow such districts to employ their energies to the "fullest capacity"; and to permit wide and extensive cooperation with other political subdivisions and agencies of government.

Furthermore, if that part of the company's system which occupies the Carmichael area, when taken over by respondent district, were not used to furnish service to the inhabitants of Carmichael, then the district would have surplus energy for distribution. Appellant's argument, based on the finding that "there is now no surplus of light, power or heat," is entirely specious, since said finding relates only to the present time and not to the time when respondent shall have taken possession of the company's system.

Another contention advanced by appellant on this phase of the case, viz., that respondent district did not have the power to condemn the company's properties in the Carmichael area because they are neither necessary nor convenient to the service to be furnished to the inhabitants of the district itself, but are sought to be acquired solely for the purpose of saving expenditure of funds, is likewise without merit.

There is substantial evidence to sustain a determination that retention of the facilities in that area is necessary or convenient for service to the inhabitants of the district. While the making of a financial profit alone may not authorize a taking, as cases cited by appellant indicate, it does not follow that considerations of economy and the prevention of excessive expenditures may not be taken into account in determining necessity or convenience. (See *Los Angeles Ry. Corp.* v. *Los Angeles,* 16 Cal.2d 779, 787 [108 P.2d 430]; *Southern Cal. Edison Co.* v. *Railroad Com., supra,* at pp. 756-

757] ; *Postal Telegraph-Cable Co.* v. *Railroad Com.,* 197 Cal. 426, 438 [241 P. 81].)

 Appellant's further argument questioning the right of respondent district to condemn a joint use in certain poles comprising a part of the company's system is predicated on the theory that no right or interest known to the law is being acquired by such condemnation, since the use in question cannot be regarded as an easement in land.

There is no substantial foundation for such a contention. It is clear that one may have a right to use a fixture such as a telephone pole without owning any interest in the land to which it is attached. In the case of *Balestra* v. *Button,* 54 Cal.App.2d 192, the court stated at pages 196 to 197 [128 P.2d 816] : "We are of the opinion that the right to maintain such a line [a telephone line] or to own an interest therein, does not necessarily depend upon the ownership of any lands. The owner of such right may or may not own lands. The right to cross over the lands of another is an easement, but no dominant tenement is necessary to support it. . . ." Again in *Rothschild* v. *Wolf,* 20 Cal.2d 17, 22 [123 P.2d 483, 154 A.L.R. 75], a case which involved a right granted to the owner of one building to use a stairway in an adjoining building of the other, it was held that "such a grant of the use of a stairway constitutes an easement and does not necessarily attach to the underlying soil." And in the same case, Mr. Chief Justice Gibson, in a dissenting opinion, based on the ground that no distinction should be made between a case where the building to which the easement attaches is destroyed voluntarily and one where it is destroyed involuntarily, stated (p. 23) : "The right to use a stairway on the property of another constitutes a grant in the nature of an easement. The easement, however, is in the building rather than in the land upon which the building is located."

Nor can there be any doubt that the joint use of a pole is a substantial right. (See 29 C.J.S., p. 528, § 16.) Such a right has been recognized by statute (*Borough of Midland* v. *Steubenville etc. Traction Co.,* 300 Pa. 134 [150 A. 300, 302]), and has been held to be the proper subject of a contract. (*Borough of Houston* v. *Washington & C. Ry. Co.,* 234 Pa. 245 [83 A. 108, 109-110].) It is a compensable item in the acquisition of an electric distribution system. (*Wiscon-*

*sin Power & Light Co.* v. *Public Service Com.,* 219 Wis. 104 [261 N. W. 711, 717 [262 N. W. 257].)

A familiar example of joint use is the interest created by a party-wall agreement, which is held to be in the nature of an easement operating for the mutual advantage of the parties. In the early case of *McCarthy* v. *Mutual Relief Assn.,* 81 Cal. 584, 586 [22 P. 933], the court stated that "Each party owned the half of the wall which was upon his land, subject to an easement in the other. This easement was merely to use the wall as a party-wall between the two buildings." See, also, *Frowenfeld* v. *Casey,* 139 Cal. 421, 425 [73 P. 152].

However, the precise legal designation which should be given to a joint use of a telegraph, telephone, or power-line pole, need not be determined herein. If the right to a joint or common use in a pole constitutes a substantial right—and we hold it does—then such a right is subject to condemnation. The Public Utilities Act, section 47(b), specifically authorizes the condemnation of "rights of any character whatsoever of any public utility, or any part or portion thereof."

In this connection, appellant complains particularly of the fact that respondent district is condemning a mere use in the poles in question instead of the fee therein or the poles themselves. Appellant has not shown that the value placed on such use by the commission is less than that of the poles, or that appellant will be in any way injured by such a qualified taking. We find nothing in the case of *City of Los Angeles* v. *Klinker,* 219 Cal. 198, 206, 211 [25 P.2d 826, 90 A.L.R. 148], cited and relied upon by appellant, which in any way militates against the right of respondent herein to condemn the use of the poles rather than the fee therein. On the contrary, that case shows definitely that the condemnor need condemn only an easement in part of the property, if that is all that is needed, while condemning the fee in the remainder.

 Where joint or common interests are concerned, the commission in fixing compensation can do no more than attempt to equalize them as best it may (*Postal Telegraph-Cable Co.* v. *Railroad Com., supra,* at pp. 438-439), and, in the absence of a showing that it has acted arbitrarily, capriciously, or with an intent to discriminate unfairly, its action must be sustained. Appellant had the opportunity to point out any injustice that would result from the compensation awarded, and if the action of the commission was in excess of its powers appellant could have so shown in the Supreme

Court. Instead, appellant insisted that the commission had regularly pursued its authority, and it may not now in this collateral proceeding ask us to usurp a function that has been invested in neither the superior court nor this court, but only in the Supreme Court on proceedings timely taken by an application for a writ of review.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied February 21, 1946, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1946. Edmonds, J., and Traynor, J., voted for a hearing.