[Civ. No. 3934. Fourth Dist. July 8, 1949.]

MARY J. WHELAN et al., Appellants, v. ELLIS ZAHNISER et al., Respondents.

Harry B. Bowman for Appellants.

Rorick, Cottingham & Moore and Monroe & McInnis for Respondents.

MUSSELL, J.—This is an action to quiet title in which plaintiffs seek to terminate an easement granted to the predecessors in interest of defendants for the construction and maintenance of a drainage ditch extending from Foss Lake to the San Luis Rey River in San Diego County. The area covered by Foss Lake is owned by the defendants, and in 1918 was owned by John Johnston, Jr., and his wife. On June 25, 1918, the Santa Fe Land Improvement Company, predecessors in interest of plaintiffs, executed a deed conveying an easement across property owned by them to the Johnstons for the purpose of constructing and maintaining a drainage ditch. The Johnstons also obtained an easement over an adjoining area known as the Pico property, now owned by plaintiffs. This easement was likewise for the purpose of maintaining a drainage ditch, and the ditch constructed in accordance with the terms of the two easements runs in a southwesterly direction from Foss Lake, across the property here involved, then across the so-called Pico property, and empties into the San Luis Rey River. The upper part of Foss Lake is fed by springs and has never been entirely dry. The lake is shallow and at certain times of each year most of it dried up so that there was no water running in the drainage ditch. At other times of the year a stream of water ran through the ditch to the San Luis Rey River.

Sometime in 1943, after the establishment of Camp Pendleton by the United States government, water used in the operation of the camp, pumped from the Santa Margarita River, was drained into Pilgrim Creek which empties into Foss Lake from the north, and such water then flowed into Foss Lake and down the drainage ditch to San Luis Rey River. Since the establishment of Camp Pendleton there has constantly been water flowing down the drainage ditch at all times. Apparently Mr. Johnston intended to drain Foss Lake and use the land for agricultural purposes. He constructed the ditch in 1919 but abandoned his original plan and the lake has been used as a place to hunt ducks during the hunting seasons since 1919. While there was testimony that some one had placed sand bags in the ditch to increase the size of the duck hunting area there were no dams or obstructions that interfered with the flow of water down the ditch.

Defendant Ellis Zahniser bought the Foss Lake property in 1945 and also received deeds to the two easements for the drainage ditch from Foss Lake to the San Luis Rey River. He testified that at that time water was flowing into the lake through Pilgrim Creek from Camp Pendleton, and through the drainage ditch but was not escaping fast enough and because of complaints of other property owners that the lake was becoming "too large" he decided to clean and deepen the drainage ditch. In March, 1946, Zahniser cleaned 300 or 400 feet of the ditch on plaintiffs' property, and in August and September of that year performed additional work in deepening the ditch. This work was done at a cost to defendants of approximately $4,000 and plaintiffs made no objection, in fact gave the United States Navy permission to deepen the ditch along the easement across the Pico property. Since the deepening of the ditch by Zahniser and the Navy, Foss Lake has dried up and the area is used for farming. The water from Pilgrim Creek now flows directly through the Foss Lake area down the drainage ditch to the San Luis Rey River.

Plaintiff Ellen Douglas Whelan was familiar with the property involved for many years. She testified that during the first 10 years after the construction of the drainage ditch, the lake was used as a duck pond and was not entirely empty and that there was no difference in conditions during the first 10 years and the period thereafter, prior to the work done by defendants in 1946.

On September 12, 1928, a decree quieting title to the easement here involved, as well as the easement over the Pico

property, was entered in an action in the Superior Court of San Diego County in which the parties involved were the predecessors in interest of the present property owners. This was a consent decree and the parties then owning the property conceded that the easement was still in effect at that time.

After the work on the ditch had been completed in 1946, plaintiffs brought this action to quiet title to the land described in the easement and the trial court gave judgment for defendants, determining that the land involved was subject to an easement for a drainage ditch by virtue of an express grant executed in 1918 and confirmed in 1928 by stipulated judgment.

Plaintiffs here contend that the easement was granted upon condition of the continued use of the property as a drainage ditch between Foss Lake and the river; that the easement terminated by operation of law upon the cessation of the use of the easement for drainage purposes; that the use of the lake and the area in general for duck clubs and duck hunting, which required the water to be retained in the lake, indicated a use inconsistent with the purpose for which the grant was originally made and that the many years of this inconsistent use, by operation of law terminated all rights defendants had to the original easement.

This document is a grant to the Johnstons of an easement for the construction and maintenance of a drainage ditch extending from Foss Lake to the San Luis Rey River on land therein described. The grantor reserved the right to maintain power lines, fences, pipe lines, etc., on the property, following which this language is used:

"To HAVE AND TO HOLD said easement over the above described premises unto said Grantees solely for the purpose of laying out, constructing and maintaining a drainage ditch thereupon and thereover and so long as said premises shall be so used, upon and subject, however, to each and all of the terms and conditions, reservations and restrictions which shall constitute covenants running with the grant and to which the Grantees, by exercising the privileges hereby accorded, have expressly agreed, and which shall be binding upon the heirs and assigns of the Grantees as follows:" The conditions following were, as far as material here, that the ditch should at all times be maintained in proper condition to perform its purpose as a drainage ditch; that the grantor was permitted to connect laterals to the main ditch; that the grantees keep the ditch free from obstructions and open to the free and

uninterrupted passage of water therein and that in the event of any failure so to do grantees should be liable for all damages resulting to the property of the grantor from any overflow; that in the event of abandonment or failure to keep the ditch in proper condition and repair to serve its purposes for three successive years the easement would become null and void and all rights of the grantees would then revert to the grantor.

The trial court found that the defendants were the owners of the easement and that the rights conveyed to defendants by it were not terminated by abandonment or failure to keep the ditch in condition or repair to serve its purposes for three successive years. These findings find substantial support in the evidence. There is nothing in the terms of the easement which prescribe the water level to be maintained in Foss Lake by the drainage ditch, nor is the precise purpose of the drainage ditch set forth. The apparent purpose of the ditch was to convey surplus water from Foss Lake to the river at such times as there was a surplus. This is indicated by the provision in the easement for the recovery of damages in the event of overflow onto the property of the grantor and by the construction which the interested parties placed upon the instrument. The record does not disclose that there was ever any question as to the proper maintenance of the ditch until the present suit was filed and it is apparent that the conditions as to its maintenance and repair were the same after as before the consent judgment in 1928. The grantors and their successors named in the easement did not insist or claim that the drainage of Foss Lake be carried out to any particular degree at any time and the ditch served its purpose at all times to carry off surplus waters.

Whether the terms of the easement created a limited fee, that is to say, a grant so long as certain conditions prevail, or is a grant containing covenants running with the land, is not of controlling importance in view of the finding of fact by the trial court that there was no breach of the conditions of the easement. This finding is based on substantial evidence and cannot be here disturbed. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

The only use of the easement was for the maintenance of a ditch to carry water from Foss Lake to the San Luis Rey River and the practical construction placed upon the grant by the parties is that it was contemplated that the water so conveyed to the river was such water as was not desired to be retained in Foss Lake. As long as water flowed from time to time down

the ditch and into the river, apparently to the satisfaction of the parties interested, there was no abandonment. ██ An easement acquired by deed is not ordinarily lost by mere nonuser. There must be an intent to abandon it either express or implied. (*Smith* v. *Worn,* 93 Cal. 206, 212 [28 P. 944]; *People* v. *Southern Pacific Co.,* 172 Cal. 692, 701 [158 P. 177].) There is no substantial testimony indicating an intention on the part of the grantees to abandon the ditch as an outlet for the waters of Foss Lake, indeed the expenditure of some $4,000 by defendants in deepening and widening the ditch is entirely incompatible with an intention to abandon it.

██ The trial court properly found that at the time this work was being done plaintiffs knew that it was being performed and had full knowledge of the progress of the work; that they made no objection thereto, and by acts and conduct encouraged defendants to proceed with the work and to complete the same, and that plaintiffs were not damaged by the work or the manner in which it was done. The acquiescence of plaintiffs and their predecessors in interest for many years in the use to which the ditch was put and in the performance of the work by defendants, together with plaintiffs' acceptance of work done on the Pico property should preclude plaintiffs from now insisting on a forfeiture of the easement on the ground that it ceased to exist and was terminated by operation of law in 1919, when the lake was first used for duck hunting purposes. (*Waldteufel* v. *Sailor,* 62 Cal.App.2d 577, 581 [144 P.2d 894]; *Sacramento etc. Dist.* v. *Pacific G. & E. Co.,* 72 Cal.App.2d 638, 649 [165 P.2d 741]; *Wilson* v. *Bailey,* 8 Cal.2d 416, 423 [65 P.2d 770]; *Estate of Davis,* 38 Cal.App.2d 579, 584 [101 P.2d 761, 102 P.2d 545].)

Furthermore the consent decree by which title to the easement here involved was quieted in 1928, established the easement as valid and existing at that time, and the evidence before us does not indicate that any change in the condition of the ditch was necessary until some time in 1943, when the waters from Camp Pendleton were turned into Pilgrim Creek and thence into Foss Lake. Then it became necessary to accommodate the excess water from the camp. This was done by the Navy and the defendants. The evidence fully supports the finding of the trial court that the easement here involved is valid and binding and in force and effect.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.